THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| AFFIDAVIT IN SUPPORT OF            ) | |
| CRIMINAL COMPLAINT AND         ) | Magistrate No. |
| ARREST WARRANT FOR                 ) | Under Seal |
| ISSAM H. ABU-GHOSH                    ) | |

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Christopher Westphal, having been duly sworn, depose and state as follows:

### Introduction

1. I am employed as a Special Agent with the Internal Revenue Service's Criminal Investigation Division (IRS-CI), and have been so employed since 2009. Since joining IRS-CI, I have been assigned to a squad that investigates complex financial fraud schemes and criminal tax schemes out of IRS-CI's Washington, DC Field Office. I have earned a Bachelor's of Science in Accounting and Criminal Justice as well as a Master's Degree in Accounting. Further, I am a Certified Public Accountant and Certified Fraud Examiner. During my employment with IRS-CI, I have conducted physical and electronic surveillance, executed search, seizure, and arrest warrants, and reviewed and analyzed records and documents of fraudulent activity. I have also interviewed suspects, defendants, witnesses, and victims, and I have spoken to other experienced investigators concerning the methods and practices of individuals and organizations involved in fraud schemes and criminal tax schemes.

### Purpose of the Affidavit

2. This affidavit is submitted in support of a criminal complaint and an application for the issuance of an arrest warrant for ISSAM H. ABU-GHOSH ("GHOSH"). GHOSH is a white male and citizen of United States with a date of birth of December 21, 1957. I am familiar

with the facts set forth in this affidavit based upon my participation in this investigation, communications with other agents, and law enforcement personnel, interviews of witnesses, my review of records, documents, and other physical evidence obtained during the course of the investigation, and information gained through training and experience. Because this affidavit is being submitted for the limited purpose of setting forth probable cause, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to charge GHOSH with: (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) engaging in monetary transactions in property derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

## Background

3. GHOSH a resident of the State of Virginia, was the owner and sole employee for Geneva Financial Consultants, LLC ("GFC"), a Delaware based corporation.

4. Mark L. Lezell ("Lezell"), a resident of the State of Maryland, was the owner and sole employee for Lezell Law, PC ("Lezell Law"), a law firm located at 1133 Connecticut Ave N.W., Washington, D.C. from 2008 through the end of 2010, and at 1615 L St NW, Washington, D.C. from the end of 2010 through 2014. Lezell has negotiated a cooperation plea agreement with the Government and through his cooperation hopes to earn a recommendation from the Government for leniency at the time of sentencing.

## The Scheme

5. Beginning in at least as early as 2008 and continuing through at least 2012, GHOSH and Lezell worked together to devise a scheme to defraud Victim-Borrowers in order to

obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

6. The scheme operated in a similar manner for many of the Victim-Borrowers. GHOSH represented to the Victim-Borrowers, verbally and in writing, that he could obtain a loan for the Victim-Borrowers through various business connections or had the ability to fund the loan with his own personal finances. Prior to obtaining the loan, GHOSH required that the Victim-Borrowers provide a refundable good faith deposit. Ghosh and Lezell led the Victim-Borrowers to believe that the good faith deposits would be held in escrow by the escrow agent, Lezell.

7. The agreements were memorialized in contracts called the "Loan Commitment," between the Victim-Borrower and GHOSH. The Loan Commitments included an "Escrow Agreement," which identified Lezell as the escrow agent and provided conditions under which the Escrow Agreement would operate. In most cases, the Escrow Agreement required that Lezell hold the funds with the understanding that they would be returned to the Victim-Borrowers once the lender was identified or if GHOSH failed to identify a lender.

8. As part of the scheme, Lezell used a bank account at SunTrust Bank, NA, ("SunTrust"), which was identified in the Escrow Agreement as the escrow account for the good faith deposits. Lezell's bank account at SunTrust that was used to collect Victim-Borrowers escrow deposits was titled as a, "Hold Account." Despite being represented to prospective borrowers as a bona-fide attorney's escrow account, the Hold Account was actually a personal checking account created by Lezell.

9. Many of the Escrow Agreements stated that the money was to remain in the Hold Account until the loan was funded. However, once the Victim-Borrowers wired the money to

Lezell's account, most of the funds were then transferred out of Lezell's escrow account within days. Often the transfers were to GHOSH's personal account at Wachovia, NA ("Wachovia"). Lezell used the funds that remained in the escrow account for personal expenses or to further the scheme by paying off prior Victim-Borrowers.

10. Money transferred to GHOSH's bank account was used by GHOSH for rent, utilities, checks payable to cash, and other personal expenses.

11. No loans were ever obtained by GHOSH on behalf of the Victim-Borrowers as required by written agreements. Instead of returning the refundable good faith deposits to Victim-Borrowers, GHOSH and Lezell used those funds for their personal benefit or to further the scheme.

12. Throughout this investigation, your affiant has identified at least 17 victims of GHOSH and Lezell's scheme in addition to others identified as victims in related schemes. Your affiant believes that Lezell and GHOSH have obtained at least $1.5 million from Victim-Borrowers as part of their fraudulent activities.

### Friends Christian High School

13. Friends Christian School ("FCS") is an elementary and middle school located in Yorba Linda, California, and part of Friends Church. In mid-2010, FCS decided to build a high school, Friends Christian High School. To build the high school, FCS needed a $30 million loan to address initial construction costs. FCS was referred to GHOSH and GFC as a potential lender. GHOSH advised FCS representatives that in order to secure the financing, FCS needed to provide a $250,000 good faith deposit.

14. On or about August 25, 2010, representatives from FCS traveled to Washington, D.C. to meet with GHOSH and Lezell. The meeting occurred at Lezell's law office at 1133

Connecticut Ave., N.W., Washington, D.C. During the meeting, GHOSH and Lezell falsely represented that GHOSH had the ability to fund the loan and had completed numerous similar funding projects in the past.

15. Based upon discussions and resulting agreements established at the August 25, 2010 meeting, on or about September 13, 2010, GHOSH and Lezell memorialized the terms and conditions of GFC's financing and FCS's escrowed deposit through a Commitment Letter and Escrow Agreement. FCS reviewed the Loan Commitment and Escrow Agreement, signed each document, and returned them to Lezell on September 14, 2010.

16. The Escrow Agreement outlined Lezell's responsibilities as Escrow Agent to the $250,000 good faith deposit. Specifically, the Escrow Agreement required that Lezell maintain $200,000 in the escrow account and that not more than $50,000 of the $250,000 deposit be applied towards costs associated with obtaining the loan. The Escrow Agreement also stated that if GHOSH was unable to fund the loan by October 31, 2010, Lezell and GHOSH would return the $250,000. The Escrow Agreement further stated that FCS had no responsibility to pay Lezell as Escrow Agent for services rendered.

17. On September 15, 2010, FCS wire transferred $250,000 to Lezell's Hold Account. Prior to the transfer, the Hold Account had a balance of $33,265.14. Within days after receiving the good faith deposit, at the direction of GHOSH and in violation of the Escrow Agreement, Lezell initiated three separate electronic wire transfers for the benefit of GHOSH, in the aggregate amount of $75,000. The wire transfers went to GFC's Wachovia Bank Account, a bank account GHOSH created and solely owned and controlled. Specifically, Lezell conducted a wire transfer on September 17, 2010, of $25,000 to GFC's account and two wire transfers on September 22, 2010, of $8,000 and $42,000, to GFC's account.

18.     The September 22, 2010, wire transfer of $42,000 was initiated by Lezell at SunTrust's Chinatown Branch located at 624 H Street, N.W., Washington, D.C. 20001, to GFC's bank account at Wachovia Bank in Virginia.

19.     Lezell conducted additional wire transfers from the good faith deposit including $75,000 to an individual in Georgia, and a $45,000 check payment to an individual residing in Maryland, both on September 17, 2010, neither of whom were associated with FCS. Lezell also used some of the good faith deposit for his own personal benefit by transferring some of the good faith deposit money to another personal bank account and purchased goods and services such as food or gas through his bank card. By October 25, 2010, the Hold Account had a balance of $32,814.43, less than it had prior to FCS's September 15, 2010, deposit.

20.     Prior to receiving the wire transfers from Lezell's Hold Account, GFC's Wachovia bank account disclosed a negative balance of $1,597.13 on September 16, 2010. Review of GFC's Wachovia Bank Account between September 16, 2010, and October 6, 2010, at which time the account had a balance of $13.93, disclosed the following expenditures, none of which were related to or were for the benefit of FCS's $30 million loan:

   a.    $13,500 in checks made payable to GHOSH;

   b.    $4,000 in Automatic Teller Withdrawals (ATM);

   c.    A $14,500 check payment to a title company located in northern Virginia;

   d.    A $2,150 check payment to GHOSH's landlord;

   e.    $9,000 in check payments to associates of GHOSH and his attorneys;

   f.    A wire transfer of $13,500 to an account at Main Street Bank registered to GFC and created by and solely owned/controlled by GHOSH.

21.     No loan was ever provided by GHOSH to FCS, and the deposit in the Hold

Account was never returned to FCS. When the Loan Commitment and Escrow Agreement were executed, GHOSH understood that no loan would be obtained and that the good faith deposit would not be returned.

### **Conclusion**

22.    Based on the foregoing, I respectfully submit that probable cause exists to believe that ISSAM H. ABU-GHOSH committed the offense of Wire Fraud, pursuant to 18 U.S.C. § 1343, and Money Laundering, pursuant to 18 U.S.C. § 1957. Therefore, I respectfully request that a criminal complaint and arrest warrant be issued for ISSAM H. ABU-GHOSH.

                Respectfully submitted,

                _____
                Special Agent Christopher Westphal
                Internal Revenue Service – Criminal Investigation

Subscribed and sworn to before me this _____ day of September, 2015.

_____
The Honorable G. Michael Harvey
United States Magistrate Judge